OPINION OF THE COURT
James H. Ferreira, J.
*184 Claimant seeks damages for injuries he allegedly sustained on April 4, 2003 at approximately 10:30 a.m. in the City of Troy when he was caused to fall on ice that had accumulated at the top of a stairway. Issue was joined, and the State of New York moved the court for an order declaring that the City must defend and indemnify the State with respect to the claim. By decision and order dated October 1, 2007, the court (Donohue, J.) granted the State’s motion.
The defendant now moves the court for an order granting summary judgment and dismissing the claim. The defendant relies upon the storm in progress doctrine in support of its motion, and further argues that it lacked notice of the condition alleged to have caused claimant to fall. Claimant opposes the motion and argues that the defendant’s expert opinion should be disregarded as untimely, and that questions of fact exist regarding the nature and location of the storm, the defendant’s notice of the storm and the lapse of time following cessation of the storm. In reply, the defendant further moves the court for permission to file a late expert response.
On March 10, 2008, a conference with the court was held to discuss the defendant’s motion. Following the conference, the court issued a letter order permitting claimant to file a surreply and providing him with an opportunity to submit an opposing expert opinion and/or to respond to the defendant’s request to serve a late expert response. Claimant filed a surreply with the Clerk of the Court on April 9, 2008 which did not include an expert opinion in opposition to the defendant’s motion.
Initially, the court concludes that the defendant shall be permitted to file the expert response of meteorologist Michael E. Augustyniak offered in support of its motion. The defendant filed its summary judgment motion within a reasonable period of time following the court’s (Donohue, J.) decision and order declaring that the City must defend and indemnify the State. Moreover, claimant was permitted to submit surreply papers, which included an opportunity to offer an opposing expert opinion, “obviating any danger of prejudice” to claimant (Ioele v Wal-Mart Stores, 290 AD2d 614, 615 [2002]).
“On a motion for summary judgment, a movant is required to establish by competent and admissible evidence a prima facie entitlement to judgment” (Howard, v J.A.J. Realty Enters., 283 AD2d 854, 855 [2001]). “If this burden is met, then the opponent to a motion for summary judgment has the affirmative burden of coming forward with competent, admissible evidence *185 establishing the existence of a genuine triable issue of fact” (id.).
“To establish a prima facie case in an action to recover damages for personal injuries caused by a slip and fall, the plaintiff must prove that the defendant either created the condition which caused the accident, or that it had actual or constructive notice of the hazardous condition and a reasonable time within which to correct it” (Campanella v 1955 Corp., 300 AD2d 427, 427 [2002]).
However, “ ‘a landowner’s duty to remedy a dangerous condition caused by a storm is suspended while the storm is in progress and for a reasonable time after it has ceased,’ even if there is a lull in the course of the storm” (Martin v Wagner, 30 AD3d 733, 734 [2006], quoting Sanders v Wal-Mart Stores, Inc., 9 AD3d 595, 595 [2004]).
In support of its motion, the defendant offers, among other things, the affidavit of meteorologist Michael E. Augustyniak, together with color copies of regional radar imagery and local climatological data published by the National Oceanic and Atmospheric Administration (hereinafter NOAA). Relying upon the foregoing records, as well as the “weather data archive maintained by WRGB-TV[” Augustyniak summarized the relevant “storm pattern” as
“featuring significant bouts of wintry precipitation [that] was impacting the Troy area on April 4, 2003. This precipitation was part of a long duration ice and snowstorm of historical proportions, which impacted the entire region during the periods of April 3, 2003 through April 5, 2003. Steady light to moderate freezing rain fell over the City of Troy beginning late on the night of April 3, 2003 and continued until approximately 6:00 a.m. on April 4, 2003. Very light freezing rain continued to fall over the City of Troy at times between 6:00 a.m. and 10:00 a.m. A mixture of snow, sleet and freezing rain began falling over the City of Troy once again during the afternoon and evening of April 4, 2003 and continued until dawn on April 5, 2003.”
He further opined that
“this ongoing storm created widespread areas of significant icing on both treated and untreated surfaces including area roadways and sidewalks in the *186 City of Troy, New York beginning late on the night of April 3, 2003 and continuing through dawn on April 5, 2003. While precipitation intensity was variable during this period, appreciable melting would not have been possible before the storm departed on April 5, 2003.”
In further support of his opinion, Augustyniak refers to a passage from the historical climate section of the WRGB-TV Web site, which reads
“April 3-5, Thursday through Saturday: Major ice storm/North country snow storm: never before seen, at least since records have been kept at Albany dating back to 1874, has there been an ice storm of the magnitude of the event that occurred from April 3rd to the 5th. It was a historical combination of snow, sleet and significant accumulation of ice that brought down thousands of trees, limbs and power lines throughout the Mohawk Valley, Capital Region and Northern Berkshire County over an extended period of time. Ice covered roads contributed to hundreds of automobile accidents Thursday night through Saturday morning. Two-Hundred and Seventy five (275) schools closed Friday due to the extremely hazardous travel conditions.”
Augustyniak states that the radar imagery, which was taken at the Albany International Airport located approximately six miles west of the City of Troy, shows that “wide spread steady precipitation, freezing rain . . . was affecting both the Albany Airport and the City of Troy . . . at 1:00 a.m. on April 4, 2003 . . . [and] as of 5:00 a.m. showing measurable precipitation that morning over the Albany Airport and the City of Troy.” He further states that “[b]y 8:00 a.m., an area of light precipitation had developed over the area including over downtown Troy” and that “as of 11:00 a.m., [w]hile no precipitation is indicated over the City of Troy, the ice and snow was ongoing approximately twenty (20) miles north of the City.”
NOAA’s local climatological data confirms the weather pattern described by Augustyniak. Notably, the data establishes that freezing rain continued to fall during the early morning hours of April 4, 2003 and subsided until late afternoon that same day when freezing drizzle and ice pellets resumed, followed by snow and freezing rain which continued into the early morning hours of April 5, 2003.
*187 The defendant also offers the affidavit of Robert Mirch, Commissioner of the Department of Public Works for the City of Troy, which describes in detail the City’s efforts to respond to the storm and to prioritize the City’s cleanup of streets, parking lots and sidewalks. Mirch asserts that “[o]n April 3, 2003 an ice storm hit the City of Troy and continued through into the evening of April 4, 2003 and early morning hours of April 5, 2003.” He further asserts, among other things, that
“ [s] alting/sanding vehicles and plows were on the roads from the evening of April 3, 2003 into the early morning hours of April 5, 2003. Given the three hundred thirteen (313) lane miles that had to be dealt with, the parking lot and stair area where Mr. Zone claims he fell at 10:30 a.m. on April 4, 2003 was a low priority and it would have been impossible for cleaning crews to have treated that area before Mr. Zone fell. In all likelihood it would have been several days before cleaning crews could have reached that area.”
Finally, the defendant offers the affidavit of William A. Mc-Inerney, City Clerk for the City of Troy. Mclnerney states that he “reviewed the records maintained in the office of the Troy City Clerk” and that
“at no time between September 1, 2002 and April 4, 2003 did [his] office ever receive written notice of the existence of ice and snow and/or the presence of any other defect at the top of the stairway adjacent to the parking lot under the Route 7 overpass near the corner of River Street and Hoosick Street in the City of Troy.”
Based upon the foregoing proof, the court finds that the defendant met its initial burden to establish that claimant’s injuries occurred during a storm that was in progress from April 3, 2003 until April 5, 2003, and that there is no evidence to establish that the defendant had actual or constructive notice of the alleged dangerous condition.
In opposition, claimant offers, among other things, the affirmation of his attorney, two pages from his deposition testimony and the deposition testimony of Charles A. Sarris, Deputy Corporation Counsel for the City of Troy. It is well settled that an affirmation of counsel demonstrating no personal knowledge of the facts is “without evidentiary val *188 ue” and insufficient to defeat a motion for summary judgment (Zuckerman v City of NewYork, 49 NY2d 557, 563 [1980]; see also Noel v L & M Holding Corp., 35 AD3d 681, 682 [2006]; Buck v Pratt, 226 AD2d 661 [1996]). Accordingly, the affirmations of claimant’s counsel and the City’s counsel are insufficient to create a triable issue of fact.
Nor are the excerpts from claimant’s deposition testimony sufficient to establish a triable issue of fact. The excerpts offered include descriptions of the snow, slush and ice that had accumulated in the parking lot and statements that the weather was “clear, cold [and the] sun was shining” and the roads were “clear” when he left for work on the morning of his accident. Viewing claimant’s statements in a light most favorable to him (see Dobson v Gioia, 39 AD3d 995, 999 [2007]), the court is nonetheless constrained to find that the statements do not establish that claimant’s accident occurred following expiration of a reasonable time after cessation of the storm rather than during a lull in the storm, as the defendant’s proof established (see Krutz v Betz Funeral Home, 236 AD2d 704, 704-705 [1997], lv denied 90 NY2d 803 [1997]; see also Ioele v Wal-Mart Stores at 616 [where Court determined that “testimony that it was not snowing at the time of the accident establishe(d), at best, that the accident occurred during a lull in the snowstorm”]).
Finally, the court notes defense counsel’s assertion, in relevant part, that
“[defendant is not liable for injuries to claimant in that the time which elapsed between the cessation of the storm and the occurrence of the slip and fall was not a reasonable amount of time so as to allow for a clearing of ice from the top of the stairs.”
However, the defendant’s proof establishes that the storm was ongoing from April 3, 2003 through April 5, 2003 and that there was a lull in the storm at the time of claimant’s accident. The court finds that counsel’s reliance upon the storm in progress doctrine as a defense to this claim includes the principle that a landowner’s duty is suspended during a lull in the storm (see Thompson v Menands Holding, LLC, 32 AD3d 622, 624 [2006]; Dowden v Long Is. R.R., 305 AD2d 631 [2003]), and, therefore, it has not awarded summary judgment on an unrelated defense (see Conroy v Swartout, 135 AD2d 945, 947 [1987]; Sadkin v Raskin & Rappoport, 271 AD2d 272, 273 [2000]).
*189 Claimant having failed to offer sufficient evidentiary proof contradicting the defendant’s proof that a storm was in progress from April 3, 2003 until April 5, 2003, the motion is granted.
Accordingly, it is hereby ordered that M-74467 is granted and the claim is dismissed.